## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNN LUCKASSON,<br><br>               Plaintiff,<br><br>   v.<br><br><br><br>FBL FINANCIAL GROUP, INC.,<br>CRAIG D. HILL, STEVE L. BACCUS,<br>ROGER K. BROOKS, JERRY L.<br>CHICOINE, TIM H. GILL, ROBERT H.<br>HANSON, JAMES E. HOHMANN,<br>PAUL E. LARSON, EDWARD W.<br>MEHRER, DENNY J. PRESNALL,<br>KEVIN G. ROGERS, SCOTT E.<br>VANDERWAL, and JOHN E.<br>WALKER,<br><br><br>               Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Lynn Luckasson ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by FBL Financial Group, Inc. ("FBL Financial" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning FBL Financial and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against FBL Financial and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Farm Bureau Property & Casualty Insurance Company ("FBPCIC") (the "Proposed Transaction").

2.      On July 20, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with FBPCIC.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $56.00 in cash per share of FBL Financial owned (the "Merger Consideration").

3.      On March 17, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against FBL Financial and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to FBL Financial shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.        This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.        This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.        Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.        Plaintiff is, and has been at all times relevant hereto, the owner of FBL Financial shares.

9.        Defendant FBL Financial is incorporated under the laws of Iowa and has its principal executive offices located at 5400 University Avenue, West Des Moines, Iowa 50266. The Company's common stock trades on the New York Stock Exchange under the symbol "FFG."

10.       Defendant Craig D. Hill ("Hill") is and has been the Chairman of the Board of FBL Financial at all times during the relevant time period.

11.       Defendant Steve L. Baccus ("Baccus") is and has been a director of FBL Financial at all times during the relevant time period.

12.     Defendant Roger K. Brooks ("Brooks") is and has been a director of FBL Financial at all times during the relevant time period.

13.     Defendant Jerry L. Chicoine ("Chicoine") is and has been a director of FBL Financial at all times during the relevant time period.

14.     Defendant Tim H. Gill ("Gill") is and has been a director of FBL Financial at all times during the relevant time period.

15.     Defendant Robert H. Hanson ("Hanson") is and has been a director of FBL Financial at all times during the relevant time period.

16.     Defendant James E. Hohmann ("Hohmann") is and has the Chief Executive Officer and a director of FBL Financial at all times during the relevant time period.

17.     Defendant Paul E. Larson ("Larson") is and has been a director of FBL Financial at all times during the relevant time period.

18.     Defendant Edward W. Mehrer ("Mehrer") is and has been a director of FBL Financial at all times during the relevant time period.

19.     Defendant Denny J. Presnall ("Presnall") is and has been a director of FBL Financial at all times during the relevant time period.

20.     Defendant Keven G. Rogers ("Rogers") is and has been a director of FBL Financial at all times during the relevant time period.

21.     Defedant Scott E. VanderWal ("VanderWal") is and has been a director of FBL Financial at all times during the relevant time period.

22.     Defendant John E. Walker ("Walker") is and has been a director of FBL Financial at all times during the relevant time period.

23.     Defendants Hill, Baccus, Brooks, Chicoine, Gill, Hanson, Hohmann, Larson, Mehrer, Presnall, Rogers, VanderWal, and Walker are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants, along with Defendant FBL Financial, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     FBL Financial primarily sells individual life insurance and annuity products through its subsidiary, Farm Bureau Life Insurance Company ("Farm Bureau Life"). Farm Bureau Life's distribution force markets under the consumer brand name Farm Bureau Financial Services. In addition, in the state of Colorado, FBL offers life and annuity products through Greenfields Life Insurance Company.

### The Company Announces the Proposed Transaction

26.     On January 11, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

WEST DES MOINES, Iowa--(BUSINESS WIRE)--Farm Bureau Property & Casualty Insurance Company ("FBPCIC") and FBL Financial Group, Inc. (NYSE: FFG) ("FBL Financial Group" or "the Company") today announced that they have reached a definitive agreement under which FBPCIC will acquire all of the outstanding shares of FBL Financial Group Class A and Class B common stock that neither FBPCIC nor the Iowa Farm Bureau Federation ("IFBF") currently own for $56.00 per share in cash. Following the unanimous recommendation of the Special Committee of the FBL Financial Group, Inc. Board made up of independent and unaffiliated directors, the transaction was unanimously approved by FBL Financial Group's Board of Directors.

The per share purchase price represents a 50% premium to FBL Financial Group's unaffected closing share price of $37.25 on September 3, 2020, a 19% premium to FBPCIC's initial proposal of $47.00 per share on September 4, 2020, and a 56% premium to the Company's unaffected 90-

day volume-weighted average share price as measured on September 3, 2020. Based on the agreed price of $56.00 per share for Class A common stock and Class B common stock not owned by FBPCIC or IFBF as of January 8, 2021, the aggregate cash purchase price is approximately $528 million.

In making its recommendation, the Special Committee, with advice from independent financial and legal advisors, conducted a detailed review of FBPCIC's offer. Among other factors, the Special Committee evaluated the offer relative to the Company's standalone prospects, including management's expectation for adjusted operating income of $88 - $92 million in 2020 and its projection for adjusted operating income of $96.9 million in 2021; an appraisal valuation produced by a leading actuarial firm; and taking into consideration feedback received from several minority shareholders.

"The Special Committee's focus has been on maximizing value for FBL Financial Group's unaffiliated shareholders, and this transaction delivers immediate cash value to them at a significant premium," said Paul Larson, Chairman of the Special Committee of the FBL Financial Group Board of Directors. "The agreement announced today follows several rounds of rigorous negotiation during which FBPCIC increased its offer multiple times and agreed the Company should continue to pay its regular quarterly dividend through closing – both of which represent material value increases. Based on the unanimous recommendation of the Special Committee and deep knowledge of the Company, the FBL Financial Group Board unanimously concluded that this transaction is the best way to deliver maximum and certain value to our unaffiliated shareholders. FBPCIC has been a long-term partner of FBL Financial and shares our dedication to protecting the livelihoods and futures of our customers, and we are confident that this transaction is in the best interest of unaffiliated shareholders."

"FBL Financial Group and its affiliated companies make up a superb organization," said Richard Felts, Chairman of the Board of FBPCIC. "We look forward to supporting its future as a private company, and to continue working to grow and strengthen the organization's relationships with its customers and communities."

Additional information about the transaction and its rationale may be found in an Investor Presentation deck that is being filed by FBL Financial Group with the SEC on Form 8-K contemporaneously with this release.

**Approvals**

The transaction is subject to the receipt of regulatory and FBL Financial Group shareholder approval, including approval from a majority of unaffiliated FBL Financial Group shareholders, and the satisfaction of specified closing conditions. Specifically, the terms require approval of (i) a majority of the shares of the outstanding FBL Financial Group Class A common stock and Series B preferred stock, voting together as a single class; (ii) a majority of the outstanding shares of FBL Financial Group Class B common stock; and (iii) a majority of all outstanding FBL Financial Group common stock not owned by FBPCIC and its affiliates, IFBF and its affiliates, or their respective directors and officers. IFBF owns 100% of the shares of outstanding Series B preferred stock of FBL Financial Group and will cause those shares to be voted in favor of the transaction.

**Transaction Details**

Closing is expected in the first half of 2021, subject to the receipt of regulatory and FBL Financial Group shareholder approval and the satisfaction of specified closing conditions. Upon closing, all shareholders of FBL Financial Group other than FBPCIC and IFBF will receive the same per share cash consideration for their shares. IFBF will contribute its FBL common stock to a newly-formed subsidiary of FBPCIC (which will merge with and into FBL Financial Group in the merger, with FBL Financial Group continuing as the surviving corporation) and will retain an ownership stake in the surviving corporation commensurate with its aggregate percentage ownership of Class A and Class B common stock of FBL Financial Group as of immediately prior to the consummation of the transaction. The transaction is not subject to a financing condition.

Upon completion of the transaction, IFBF will continue to be the majority owner of the Company, and FBL Financial Group common stock will cease trading on the New York Stock Exchange.

**Advisors**

Barclays Capital Inc. served as financial advisor to the Special Committee of the Board of Directors of FBL Financial Group, and Sidley Austin LLP as its legal advisor. Milliman was also engaged to provide an independent actuarial appraisal of FBL Financial Group to support the Special Committee's evaluation and negotiation process.

Goldman Sachs & Co. LLC served as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor to FBPCIC.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

27.     On March 17, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

28.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

29.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

31.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

32.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Barclays' Financial Opinion

33.     The Proxy Statement contains the financial analyses and opinion of Barclays Capital Inc. ("Barclays") concerning the Proposed Transaction, but fails to provide material information concerning such.

34.     With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

35.     With respect to Barclays' *Sum of the Parts Valuation Analysis*, the Proxy Statement fails to disclose: (i) the basis for Barclays' selection of the $11.0x – 13.0x$ multiple range of calendar year 2021 estimated earnings for the Company's adjusted protection business;

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND   EXCHANGE   COMMISSION   (May   17,   2017),   *available   at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

(ii) the basis for Barclays' selection of the range of 6.0x – 7.0x multiples of calendar year 2021 estimated earnings for the Company's adjusted annuity business; and (iii) the basis for Barclays' selection of a blended valuation range of 9.0x – 10.5x multiples.

36.     With respect to Barclays' *Selected Precedent Life Insurance Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

37.     With respect to Barclays' *Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Barclays' selection of the range of selected cost of equity of 10% to 12%; and (ii) the inputs and assumptions underlying Barclays' selection of a 2% perpetuity growth rate.

38.     With respect to Barclays' *Selected Precedent Buy-in Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

39.     With respect to Barclays' *Analysts Price Targets*, the Proxy Statement fails to disclose the specific price targets observed in the analysis, as well as the sources thereof.

40.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

41.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

46.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

47.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

48.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

50.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of FBL Financial within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of FBL Financial, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 13, 2021                          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*